in the case of Norman v. Elkin et al. Mr. Felice? Felice? Alright, we say Felice in Western Pennsylvania too, but I wanted to get it right. May it please the court, good morning, your honors. David Felice of Bailey and Glasser in Wilmington, Delaware, on behalf of the appellant, Jeffrey Norman. With the court's permission, I would like to reserve five minutes for rebuttal. The court directed the parties to focus our arguments on issues related to the statute of limitations. As identified in briefing, a resolution of this issue favors Mr. Norman. In the first instance, appellees did not and cannot refute two simple and appeal-dispositive facts with respect to Mr. Norman's arguments addressing Delaware's section 220 tolling doctrine. First, it is settled Delaware law that the institution of other litigation to ascertain facts involved in a later suit will toll the statute of limitations while that litigation persists. But doesn't the Sutherland case, which is decided by the exact same court, also the tort of chancery, say that there's no hard and fast rule that there's a tolling of the statute of litigation pending a 220 action? There's no hard and fast rule that says that according to Sutherland in 2009. Am I correct? Well, that quote is a correct quote. However, you have to put that in context. That was a one page. First of all, that was dicta. Second of all, it was a one page decision on a motion for reconsideration from Vice Chancellor Lamb. It still was an opinion of a co-equal court. Am I correct? Correct. But then you have to look at the bookends. The bookends, Vice Chancellor Lamb in the first decision said you look at when the section 220 action was filed and you look back three years. This filing of the section 220 action is the operative filing. Why don't we look at another Vice Chancellor Lamb opinion, the Orloff versus Shulman opinion. Are you familiar with that?  All right. In that case, he says that claims to plead sufficient facts to show that they could not have brought these claims without the information gathered during the 220 action. That seems to imply that 220 isn't an automatic. You've got to show to get tolling. You've got to show that you really needed it in order for it to have a tolling effect, right? Well, I don't think that's in a later decision from Technicorp. Then Vice Chancellor Jacobs said facts involved in the later litigation. So what was involved in the later litigation here? You had breach of fiduciary duty, breach of contract, and fraud. Sure. But the question that Judge Schwartz put to you, and I'd still like to get an answer to, is the way you framed and started out was to say filing a 220 action will result in tolling. As if that were a hard and fast rule. We've got nothing in Technicorp that says it's a hard and fast rule. And we've got opinions from the Court of Chancery that seem to indicate it's not a hard and fast rule. So if you assume for the sake of argument, you've got to show something more than we filed a 220 action, that there's got to be something that indicates we needed to or was appropriate to. What do you have? Well, if that's the standard you're going to apply, what do we have here? We have the spreadsheet, the internal U.S. Mobile Com spreadsheet from November 2002 that discloses how much was earned, how much Mr. Elkin paid himself, and where the rest of the money went. But doesn't that just more of the same? You had before the 220 action and its production of documents, there was already disclosures in October of 2003, at least as late as that, which showed there were, well, before that, in 2002 we knew there were distributions, and in 2003 we know there was differences in terms of what he was reporting as what he was taking for himself. So your client was on notice, he was receiving nothing well before the disclosure of that document. So doesn't that document just provide additional information, but doesn't satisfy sort of that Orwell, you could not have filed perspective? First of all, with regard to when he knew, 2002, the disclosure was, it wasn't your turn. It wasn't, I took everything, or I took everything as repayment of shareholder loans. So by October 2003, though, he got documents, or even before that, showing distributions were taken, he got his K1s, he was getting nothing. So I guess it goes back to, my point is, it wasn't a disclosure of that spreadsheet, simply additional information, but not information that he needed to bring the action, kind of parroting off the Orwell language and harkening on what Judge Jordan was asking. But when he received the shareholder loan agreement in October 2003, it was just that. It was a one-page agreement that purports to be executed in 1995, which we later found out may have been executed in 2000. What went into that? What was the decision-making that went into that? Was there self-dealing? Was there fraud? Was there an intent to deceive? Mr. Felice, let me really go to the first things, and not being a, are they called Delawareans? There you go. All right. Nor familiar with the state's jurisprudence, other than what I've, from time to time, dealt with on this court and on the district court on occasion. What's the underlying legal policy reflected in 220? Well, the policy is a well-established policy. The Delaware Supreme Court has admonished derivative plaintiffs, and those are stockholders of a Delaware corporation, to use the tools at hand to discover facts that will be used in a later proceeding. If the court were to accept Judge Farnan and Judge Stark's incorrect application of Technicorp, which occurred after the Orloff decision, it was a refinement of Orloff, it would endorse an unprecedented exception that would instantly swallow that rule. You don't use the tools at hand, because if you do, you'll be penalized. And that's exactly what Vice Chancellor Jacobs, then a vice chancellor who became a justice of the Supreme Court, lamented, quote, it would penalize, not encourage the use of those important tools. Counsel, I'm sorry to interrupt you, but I thought Orloff was in 2005, and Technicorp was in 2000. So isn't Orloff a refinement of Technicorp? Yeah, Orloff cites Technicorp, doesn't it? I thought that it came after Technicorp, but the subsequent decisions after Technicorp, the Sutherland decision, there was a vice chancellor Lamb decision, a vice chancellor Noble decision, they all applied Technicorp and said, with the exception of that one-page decision on a motion for re-argument, section 220 totals the statute of limitations. Now, isn't it the case that there, well, let me ask it this way. Is it your position that 220 acts officially as an automatic timeout no matter what? If a person received an affidavit sworn, I've stolen from you, and here's how much, and it was one day before the running of the statute of limitations, that the filing of a 220 action, all by itself, that's good enough to get you a tolling? No, we never said it was automatic. All right, well, it sounded like it, you said that. It sounded like you said it right at the start. So if you accept that it's not automatic, that there's some discretion in the judge to decide whether or not there was a sufficient showing here that the 220 action was going to reveal something that could be useful, then is our review of the district court decision about whether you met that standard, the typical thing we do when there's discretion in a trial judge, and that is abuse of discretion? Well, first of all, neither judge, the court below, made a decision. Answer my question, all right, and then you can answer what you want to answer. Is our review of the decisions about whether or not the 220 action would be tolling for abuse of discretion, or is there some other standard we should be applying? Is there law in Delaware? I don't know of any there could be. To the extent there's mixed issues of fact and law. It stands to reason it would be abuse of discretion, right? Correct, but when you make the underlying predicate decision as to is that a legal issue, that would be plenary review. Sure, but it seems to fit, does it not, comfortably within the category of things that we typically think of as abuse of discretion review? With regard to the facts, yes. Okay, well, let me turn to this question. I just want to make sure I understand what's actually in front of us, because this thing has been around for a long time, as everybody knows. There's a lot of history on this. The things that are in front of us are, that have been preserved and are being argued on appeal, are that you are timely on two breach of contract claims. One related to failure to make programmatic distribution, and the second with relation to the signing of the shareholder agreement, and that you're also arguing about your fraud claim and the conversion claim. Am I correct that that's the universe we're dealing with on appeal? Well, with that, if those were reinstated, we would be made whole. We would not necessarily have to go back on the fiduciary duty claims. But I'm just asking, I'm asking a real specific procedural nuts and bolts question in terms of what you appealed and what you argued. Have I accurately described the universe of claims from this long history of litigation that we are now addressing and dealing with? No. What else did you preserve and where did you preserve it? We could be remanded to adjudicate the breach of fiduciary duty claims that were not ever adjudicated because Judge Foranen found that the two-year statute, the borrowed two-year statute of limitations applied. But I think my colleague's question to you is where did you preserve that in your briefing? Well, you said we preserve all orders. We saw your notice of appeal. We saw your brief. And at the very end, there's sort of this general language. How is that preservation of that issue? Because those are the fiduciary claims that, in one instance, the Internal Affairs Doctrine applies and addresses. If the Internal Affairs Doctrine applies and exclusively occupies the fiduciary relationship between a stockholder and a fiduciary. So you're saying that your argument about the statute of limitations related to the Internal Affairs Doctrine preserves your arguments about breach of fiduciary duty. That's the preservation argument you got. Right. And you have to put this in context. This decision was handed down on Judge Foranen's last day on the bench. He retired on July 30th. He put out eight decisions that day. Two weeks leading up to it, he put out 40 decisions. There wasn't much discussion with regards to fiduciary duty other than its time bar. That is interesting history, but it doesn't help me much with the question of whether you preserved it for appeal in 2016. But be that as it may, if my colleagues will indulge me for just a moment, you're over time here, but you have made arguments about the Internal Affairs Doctrine under Delaware law. And you make the assertion that Citigroup somehow means that the statute of limitations of Delaware will always apply. Now I've got two questions for you in that regard. I have searched Citigroup and I can't see anywhere where it talks about statutes of limitations or procedural rules at all. Am I correct about that or am I missing something? You're correct. The second question I've got is, since you say we're entitled to Delaware law, is it not the case that the borrowing statute is Delaware law? Here's how it all fits together. That does not answer his question. Yes, the borrowing statute is Delaware law, but the Citigroup decision recognizes that the Internal Affairs Doctrine exclusively occupies the relationship. Exclusively would include, I would presume, everything, which would include procedural. Assume that that's right. I'm not sure that that's right at all, but assume that that's right, that it does include procedural law. You've got Delaware law. Delaware law says, we, Delaware, as a matter of our policy, when it comes to these kinds of things, we'll borrow that statute of limitations. That's not a statement of Pennsylvania law. That's a statement of Delaware law. So you've got Delaware law. So what's your complaint? It's not a complaint. It's an argument that the action arises in Delaware because Delaware law exclusively occupies that relationship. The action arises in Delaware because it's a relationship between a director and his faithless conduct to a minority stockholder. Okay. Now, I presume if you actually had a case that said the Internal Affairs Doctrine dictates that Delaware statutes of limitations will override the borrowing statute, we'd have heard that from you, right? Well, we have the Circle Y case that says... Which does not say that, right? It applies the law of the state of incorporation, which was, I believe, in Texas. There was a Mervyn decision. I don't believe it was in our briefing. It was another bankruptcy court decision, I believe, by Judge Walrath that also addressed the borrowing statute. And that judge said it arises in that state of incorporation. So the borrowing issue isn't a problem. They're not form shopping. When you come to Delaware and you're a shareholder of a Delaware corporation, you're not form shopping. We're going to where the company exists. So the concerns that the borrowing statute addresses, which is form shopping, aren't an issue here because we came to Delaware because U.S. Mobile Com is a Delaware corporation. Understood. Thank you, Mr. Felice. Thank you. Thank you, Mr. Felice. We'll have you back on rebuttal. Mr. Capone. May it please the Court, Steve Capone from K&O Gates on behalf of the Appellees Cross Appellants. Before I jump into what I think is the totaling of the court issue, I'd like to briefly address what the Court was just discussing. That's the borrowing statute. And the plaintiff's counsel made the statement that when it involves a Delaware corporation, the action occurs in Delaware. But I would direct the Court to Judge Farnan's decision from 2007, which was not appealed. But Judge Farnan found the parties do not dispute that the causes of action arose outside of Delaware. So I think plaintiff on appeal is taking a position directly contrary to the position taken below. Okay. Let me see with you if I can get a fix on what's actually in front of us. On page 32 of your answering brief, you say, quote, most of Norman's claims were time-barred before the 220 action was filed. Most. So are you acknowledging that there are some causes of action that are not time-barred? No, Your Honor. Your Honor, what I'm acknowledging is that the Court below, the issue of this case was the Court, by determining that the 220 did not toll, when conducting an analysis, looked at the last date at which plaintiff was on notice and would that save the claims. No one ever determined the first date. So when was plaintiff first on notice? So what I can see is the opinions below do not definitively rule out that some of these claims may survive. Some claims, they clearly do rule out. So that's an open issue. The earliest date. Well, I did see your earliest argument date, but that argument about most, that didn't seem to me to be something that was bound in with or part of that argument. In fact, it says, studying the three jury verdicts claims proves that Norman had what he needed to file as early as 1998 and most were time-barred before he filed this 220 action. So I'm trying to figure out, according to you, most means, but not all were. So before he filed this 220 action, what was still alive? Again, Your Honor, you're asking my opinion, none. If you're asking me what did the record below conclusively establish, that most were, not all were. I'm referring in the brief to the record. I made it very clear not to overstate the record. We think the facts show that if the court conducted an analysis, when was this plaintiff first on notice and when did the claims expire, they're all expired. The court did the opposite, understandably. It said, okay, plaintiff, you need to at least survive past this date. Do you or do you not? And in that context, the court found that most of the claims would expire, but not all. With respect to the claims that are in front of us, Judge Jordan asked your adversary if the three, the breach of contract claim, the two methods of breach, the distribution and the shareholder agreement, the conversion claim and the fraud claim, were those the causes of action in front of us to adjudicate? Is that your understanding of the only claims in front of us? Yes, Your Honor. With respect to the breach of contract claims, the last breach of contract claims, the distribution, the tolling from the 220 would be necessary to keep those claims alive. And so when you were talking about some claims may have been timely, is the only one that you're focusing on the execution of this shareholder agreement breach of contract theory? Is that the only one that would have still been timely? The only one, in our opinion, the shot at being timely is that contract claim, yes. We believe that the record, again, Judge Farnan explicitly found that the earlier contract claims expired long before. Then there's a group of claims where the court found if we pick this date, they expire by that date, although we think the facts are pretty clear that they all expired years before. And then the contract claim is the only one that's sort of in that last category. All right. And what's that last category? The decision by Judge Stark was, well, you didn't show damages. And I'm flowing from that. The assertion on that breach of contract theory is, as I take it, you created, you breached your contract by characterizing as a shareholder loan agreement something that actually allows you to convert your capital contribution and thereby claim a priority position over me so I didn't get money. That breached our agreement of how this was supposed to work. I understand. Is that your understanding of the claim? Have I accurately described the claim as you get it? I'll be completely candid. This is a long history of this case, and that claim has been in contention. My opponent's theory on that one has consistently changed. Am I in the ballpark? Roughly speaking, yes. I take that back, Ron. I think more accurately they're saying the simple execution of that document violated some agreement. Yeah, and it violated the agreement, as I understand their assertion, because it was putting Mr. Elkin ahead of Mr. Norman, that it was a way of altering what had been this understanding agreement of how this was supposed to work and it jumped him ahead in a way that breached their understanding. So if we take that as their argument, and in fact that does happen, monies flow after that agreement in a way that go to Mr. Elkin and not to Mr. Norman, why aren't those damages? Well, Your Honor, a couple of points. First, from a chronological standpoint, your facts are slightly off. The Chevrolet loan agreement, as the appellants argue repeatedly, was executed after the fact. The transactions at issue, the flows of money, occurred. So it wasn't, to your point, this document was executed. All of those flows? Not all the funds. A large portion of the funds, this happened over a period of time. When the SLA came about, after some, what were supposedly loans, were advanced by Mr. Elkin to the business, is that right? Correct. And that would support, as a matter of evidence, according to your position, the subsequent distribution or distributions to him as being repayments of loans as opposed to some share of the profits. Is that right? Correct. My client took the monies he put in as loans to repay them. It was documented. It continued to be there after certain distributions or payments to Mr. Elkin. There were a few payments after the execution of the agreement. Yes, but the vast majority. And that, if one accepts their theory, those would be damages associated with that breach, would they not? The issue with the damages, there are two issues with the damages, Your Honor. One, had that been a stand-alone claim, that would be one issue, but the damages were identical to the other contract claims. Mr. Norman's proportion of those distributions or those payments to Mr. Elkin, as I understand it, 25%, it effectively be damages here. If he is contending he did not receive his share, which according to the 75-25 capitalization that was intended here, 25% of the profits would be Mr. Norman's share, is that correct? The distribution should go on a 1-4-3-4 basis? In theory, yes, but I have to point out briefly, the plaintiff below conceded that they put on no evidence of damages at trial. Please don't go there. Blake, you can just set that aside and stick with us on the argument. I answered the question. Now, you said if this were a stand-alone argument. I want to point to you, Judge Stark's footnote 2 in the Norman 4 opinion, this is the 2015 opinion from August 14th, where he says, while the defendant filed just a single motion, he filed two separate sets of briefs in support of it. DI-263 and 273 go to Elkin's request that the court enter judgment as a matter of law for Elkin on Norman's breach of contact 3 based on pro-rata distributions, while DI-65 and DI-274 go to his separate request that the court enter judgment as a matter of law that the execution of the shareholder lien agreement was not a breach of contract. So you yourself treated these as two separate claims. You briefed them separately. To the chagrin of the district court, instead of submitting a single set of briefs, you separated it and filed two sets of briefs to address two separate theories, two separate claims, didn't you? So you understood these to be two separate contract claims. No, Your Honor. You filed a separate set of briefs on something because, what, you thought I could pull one on the district court and brief the same thing twice? Or in good faith did you think there's a separate claim and I'm entitled to brief it separately? I will answer your question very specifically, Your Honor. Pre-trial, we had a discussion, it's in the record, I can point the court to it, where we raised this issue that this is one claim. Plaintiff repeatedly said it's a separate claim and told Judge Stark, I will present separate damages because that was my theory. So, Your Honor, there's no separate damages. These are two separate claims. Plaintiff presented them as separate claims at trial, never proved damages. So post-trial, I treated them on the contract of the plaintiff. And separate claims. Teed up the question. Right. So Judge Stark understood the question today. You understood it to be that they were presenting separate claims and you briefed it as separate claims and they treated it as separate claims. Good. Yes. On that separate theory, that separate claim theory, what is it in the law that means you have to show separate or different damages? Why is a person not entitled to present two theories, two different theories from which the same set of damages might flow? Isn't that a fact that Rule 8 of the Federal Rules of Civil Procedure permit a person to do? I think the Federal Rules permit you to plead in the alternative, but by the time you get to trial, you cannot try in the alternative. You can't say, well, I was damaged. Why not? Where do you get the law for that? If it's a legal wrong, why is a plaintiff not permitted to attempt to prove it? Those theories, those separate theories, in fact, might the plaintiff not even be permitted to pursue inconsistent theories, if you wish to do so? The plaintiff was entitled to pursue it, the plaintiff did pursue it, and the plaintiff failed to establish, by admission, post-trial argument, that he never pursued an element that was necessary, which was damages. That's a fine by Judge Stark. And an admission by counsel. Now we're back to the by admission. And I have in front of me Mr. Felice's statement. Trust me when I ask him about it. But if the assertion is, here's the SLA, we just ran all through that, and there were monies that flowed afterwards, why isn't it perfectly legitimate for them to say, as I assume he's going to say, he'll speak for himself, I never said that the signing of the document itself, all by itself, suddenly created a set of damages. I'm saying that this was a breach of contract, and things happened that caused damages. And if that is the line of argument, the fact that Judge Stark says, did you put on separate evidence about damage from the signing, how does that get you out of the logical flow of the argument? If that is their argument. Your Honor, again, you're raising a lot of what could have shut us, and what we have on record is what did happen. The plaintiff did go to trial. The plaintiff did have the opportunity to prove his damages. The plaintiff could have made the arguments that you're advocating, that my damages are limited to only these last two transfers. I'm not advocating anything, Mr. Capone. I'm trying to impress you on your assertions. Your assertion is, and you were persuasive, evidently, in the district court. Judge Stark accepted it, and Mr. Capone, at a key point in the oral argument below, said I did not show or put on evidence about X. I'm trying to get you to answer the question as a matter of legal, just the law. Somebody, there's not some requirement for, quote, separate damages. You can make a theory, you can put forth a theory, and the damages associated with that theory don't have to be segregated or different from the theory that you also put out in another claim, do they? Your Honor, they do not have to be segregated, but you have to put on evidence of damages to satisfy a critical argument. And so let's turn to the trial then, right? You got to trial. There was evidence presented. The plaintiff is a master of his complaint, put on as evidence. Jury was instructed on damages, am I correct? Yes. On all the causes of action. Jury returns verdict based upon the evidence presented and the arguments of counsel. And on this issue, this execution of SLA, even assuming it was argued in the way that my colleagues are discussing, what was the jury's finding? Nominal damages, no actual compensatory damages, right? Only nominals on this cause of action, am I correct? Correct, Your Honor. So if this court were to vacate the post-judgment ruling, vacating that verdict, right? Yes. It would reinstate and it still would not be anything more than the reinstatement of the nominal damage award, am I correct? Correct. And, Your Honor, I get a little passionate about this argument because if you look through the record, this issue was addressed square head on for years. And for years this plaintiff said, I had independent separate damages. And if you look at the pretrial discussion with Judge Stark, in the post-trial, he was quite upset about it. He said, you told me you're going to put on separate damages. Did you? No. And so there's a lot of theories plaintiff could have had and plaintiff promised to have, but never put forth. And then when they did go to trial, and you have to have damages, you can't double the covering.  That I don't think you're permitted to do. You have to tie the damage, a specific number, to an action. You can't just gross it up and say, figure it out, Jerry. And that's what this plaintiff did, and that's why it was improper. And that's why Judge Stark found post-verdict this plaintiff failed to do what it promised to do, which is point to independent damages with respect to the breach of contract claim. I see my time is up. Mr. Court, any other questions? There are lots of questions, but that's okay. We've asked plenty. Thank you. Thank you very much, Mr. Cronin. Mr. Felice, you have rebuttal. Mr. Cronin, with your time, I suggest you start right at the back end of that, which is assume we were to agree that it was your SLA, your shareholder loan agreement piece was not time barred. Is the result of that that you get to go back and get a dollar? Yes. You get one buck. Yes. You're done. We did not, as we did the first trial, move for a new trial on that. We would get one dollar, which is unfortunate because in every trial, from Vice Chancellor Parsons to the two jury trials, the fact finders found that he was a faithless fiduciary. Maybe Mr. Elkin gets away with murder because of the timing with which your client chose to pursue legal remedies, but that's neither here nor there. For him, it's here or there, but as a legal matter, that's not something we can go back in time and fix. But going forward in time, you're acknowledging that the most you could get on a remand is a reinstitution of nominal damages. On that claim. On that claim. They did challenge the statute of limitations. We pointed out that that claim arose when we got the shareholder loan agreement in October 2003. If you tack on three years, we were timely, even with the filing of our substantive complaint. And I pointed that out to them. They withdrew the motion with regard to statute of limitations. That has never been set aside on statute of limitations. It's timely. But what evidence or argument did you make? We all read the comments made to the district court that there was a concession. There were no independent damages arising from the SLA cause of action. We don't want a double recovery. We never want a double recovery. We can get nominal damages. There was a jury instruction on that. Or the jury could have decided, you know what? He was damaged by the shareholder loan agreement, not by the prorouted distributions. It was up to the jury to decide. And the jury did decide and awarded the 25% of the distributions on the breach to failure to distribute prorouted distributions. So how can we say the district court erred in vacating the SLA verdict on the grounds that there was no showing of damages? They're the same damages. And you are entitled to say, we've been damaged by two independent breaches brought about the same damage. And was that the argument you made to the district court? Yes. And I don't want to – if I – Now I'm puzzled. Because I'm not sure – it sounds like you're saying, yeah, I didn't make our case with respect to this one claim. But then it seems like you're also saying, yeah, it's the same damages. I'm not sure what you're saying, Mr. Felice. I'm puzzled. Because if your theory is, we should be entitled to go back because the damages associated with the prorouted distribution, those are the damages associated with the shareholder loan agreement. Why aren't you arguing that? Or if you are, help me understand how you argued it below and what it meant when you said to Judge Stark, yeah, it's true, I didn't put on damages evidence. The shareholder loan agreement is Mr. Elkin's argument. Mr. Elkin, despite admissions, clear admissions in his counterclaim at paragraph 127, that's Joint Appendix 436, where he says our agreement was we're going to fund the company $750,000, $750,000, $250,000. He admitted it as a stipulated fact in the pretrial order, and his accountant corroborated it. He chose to change it based on a ratio. He said, well, we paid for the New York office, and I paid for the rent on my house in Villanova. I'm going to draw up my capital account and draw yours, and I'm going to apply a three-to-one ratio. Right, and you created a cause of action based on that, right? Correct. Right. Let me just put it to you really as, not to make a pun on our district court colleague, but as starkly as I can. You have said, and said to Judge Stark, I didn't put on damages evidence associated with that theory. You come to us and say, wait a second, the damages, they're all in there. It's the same. You just argued it from the podium. They're the same damages. We put it in front of the jury. Here are the damages. You can decide whether it's the pro rata or it's the shareholder loan agreement. It's the same pot. So I'm puzzled. How can you have it both ways? Either you're acknowledging I did have some separate kind of damages I had to address, and I didn't do it. Or you've got a pitch associated with the overall damages associated with Mr. Elkin taking money. Help me out with that if you can. Not because we believe the shareholder loan agreement is a sham. It was found to be a fraud in the first trial. It was never, ever disclosed in the tax returns for all those years. Okay, so you're into your fraud plan. Right. If we accept that argument, then our damages right now are nominal damages. But what I said at trial was we don't have independent damages. We don't want a double recovery. We don't want 25% for this and 25% for that. Okay. Thank you. Thank you. Thank you, counsel. We appreciate your efforts to shine light on a case with a lengthy history. This panel, I can assure you, will not allow the matter to extend any additional lengthy period and turn this into some kind of Dickensian-like John Dice versus John Dice. We'll have a disposition for you in a relatively short period of time. Thank you. We'll take the matter under advisement.